ILLINOIS CENTRAL RAILROAD COMPANY *v.* COPIAH COUNTY.

1. RAILROADS.  *Highway crossings.*  *Bridges.*  *Code* 1892, § 3555.

 Code 1892, § 3555, providing that, when a railroad is constructed so
  as to cross a highway; and a bridge be necessary for passage along
  the highway across the railroad, it shall be the duty of the rail-
  road company to erect and maintain the bridge, applies to a
  highway laid out after the railroad was constructed.

2. SAME.  *Police power.*  *Constitutional law.*  *Constitution* 1890, *sec.* 14.
  *Due process of law.*  *Constitution* 1890, *sec.* 16.  *Charter rights.*

 The section is within the police power of the state, and when con-
  strued as above does not deprive the owners of a previously con-
  structed railroad of property without due process of law, and is
  not objectionable as impairing the charter rights of the appellant
  railroad company's lessor.

FROM the circuit court of Copiah county.

HON. ROBERT POWELL, Judge.

Copiah county, appellee, was plaintiff in the court below; the railroad company, appellant, the lessee of the New Orleans, Jackson & Great Northern Railroad Company, was defendant there.  From a judgment in plaintiff's favor, defendant appealed to the supreme court.

The board of supervisors of Copiah county passed an order in the following words: "Ordered by the board that the Illinois Central Railroad Company proceed at once to build a bridge over its track about one mile north of Crystal Springs for the benefit of the traveling public on Frink McPherson Road No. 126, leading from Road No. 1 to Hennington Camp Ground."

The suit was predicated of § 3555 of the code of 1892, which section is an follows:

3555 (1053).  *Highway crossings and bridges.*—Where a railroad is constructed so as to cross a highway, and it be neces-

sary to raise or lower the highway, it shall be the duty of the railroad company to make proper and easy grades in the highway, so that the railroad may be conveniently crossed, and to keep such crossing in good order; and it shall be the duty of the company to erect and keep in order all bridges on any highway, at such points as bridges may be necessary to cross the railroad; and any company which shall fail to comply with these provisions shall forfeit the sum of one hundred dollars, to be recovered by action in the name of the county in which the crossing or bridge is situated.''

The action was a demand for $100, because of the failure by the railroad company to comply with the order of the board of supervisors and the statute. The facts were agreed upon, and the statement thereof is contained in the opinion of the court.

*Mayes & Harris,* for appellant.

Is a railroad company which has been located and constructed for years required by § 3555 of the code to erect a bridge in a case where a new highway, laid out and established long after the railroad itself has been established and put in operation, across the railroad at a point where there is a cut, so that a bridge across the railway track and bed is necessary to maintain the continuity of the highway? We maintain that such is not the law. We do not care to deny the proposition that the obligation laid upon a railroad to keep in order highways which it intersects, where that liability once attaches, is a continuing liability. Neither do we care to controvert or discuss the proposition that where a new highway crosses an established railway on the same grade it is a legitimate exercise of the police power of the state to require the railway to plank its approaches and tracks, and keep the highway at its point of intersection with the railroad bed in good order, so that parties using the common point in their wheeled vehicles may quickly go across the railroad, or being once on it may quickly and easily get off of it. Such authority of the legislature has been upheld in

some states as a legitimate exercise of the police power, looking to the safety of the traveling public, who are traveling under such conditions as must necessarily lead them to cross the railway track.

It is true that a number of states hold that even this cannot be required of a railway once established, where the highway is laid off across the railway is of a later date, without previous compensation paid to the railroad company for the additional burden laid upon it in the use of its track. But this question does not control the case at bar. We come to the specific case. Here is an instance where a new road is laid out, and the board of supervisors in laying it out make their election to cross the railroad, not on grade, but to run the new road along the top of a ridge and cross the railroad at a place where there is a cut, so that the erection and maintenance of an expensive a ndmore or less dangerous bridge is required, Under these conditions the railroad company cannot be required to erect the bridge or to maintain the same. This statute is penal, and it must be narrowly construed. Mr. Sexton, in his brief, admits that the first portion of the statute applies in cases where the highway is already established, but he contends that the special clause now under consideration applies to a highway, whether established before or after the railroad is built. We say not. Analyzing the statute itself, we see no reason to suppose that the intention of the legislature was to establish two different rules.

On this general subject, we cite the following authorities: *Township* v. *Railroad Co.*, 43 Kan., 543; *Commissioners* v. *Railroad Co.*, 46 Kan. 104; *Canal Co.* v. *State*, 4 Zabriskie, 62; *Railroad Co.* v. *County*, 14 Gray (Mass.), 155; *Railroad Co.* v. *Railroad Co.*, 121 Mass., 124; *Railroad Co.* v. *Bloomington*, 76 Ill., 447; *Railroad Co.* v. *Baltimore*, 46 Md., 425, *The City* v. *Railway Co.*, 102 Mo., 633; *Grand Rapids* v *Railroad Co.*, 58 Mich., 641, 648; *Railway Co.* v. *Hough*, 61 Mich., 507; *Traction Co.* v. *Railway Co.*, 119 Ala., 129.

Again, if this statute should be held to mean what the county contends that it does not mean, so that it is made applicable to a case like this, it is, we submit, unconstitutional, because it is a deprivation of the railroad property without due process of law.

The charter of the New Orleans, Jackson & Great Northern Railroad Company, under which appellant operates the road, sec. 11, provides as follows:

"Sec. 11. Be it further enacted, that whenever in the construction of said road it shall be necessary to cross or intersect any established road or way, it shall be the duty of the president and directors of said company so to construct said road as not to impede the passage of persons or property along the said highway," etc., etc.

So it will be seen that by the express provision of the charter the obligation of the company in this particular is provided for, and it is limited to crossing highways by the railroad in the course of its construction. (See Laws 1850, p. 74; also Laws 1878, p. 223, also Laws 1882, p. 1023.) Of this charter the court will take judicial notice.

Therefore, the imposition by this statute of the obligation to erect a bridge, under the condition existing in this case, would be a violation of the rights of the company, and would violate the clause of the constitution of the United States which forbids the impairment of the obligation of a contract by subsequent legislation; and also a violation of the fourteenth amendment, since it would be a deprivation of property without due process of law. *Detroit* v. *Railway Co.*, 43 Mich., 140; *Railway Co.* v. *Me.*, 96 U. S., 499; *Sinking Fund Cases*, 99 U. S., 700.

*J. S. Sexton*, for appellee.

By reference to the code of 1892, § 3555, it will be seen that there are two duties imposed thereby upon the railroads traversing the state of Mississippi. The first duty is found in

the first paragraph of the section which provides that "where a railroad is constructed so as to cross a highway (probably meaning a previously constructed highway) and it be necessary to raise or lower the highway, it shall be the duty of the railroad company to make proper and easy grades in the highway, so that the railroad may be conveniently crossed and keep such crossing in good order."

The next duty imposed is found in the second paragraph of the section in these words "and it shall be the duty of the company to erect and keep in order all bridges on any highway, at such points as bridges may be necessary to cross the railroad."

It will be seen by reference to the statute that there is no distinction made in the duty of the railroad company to erect and keep in order bridges at such points as may be necessary, whether these bridges are required to be erected on highways built anterior or subsequent to the construction of the railroad. It is the necessity for the bridge and not the age of the highway which determines the duty of the railroad. The idea underlying the statute is that the railroads traversing the state have the right of eminent domain and may cross any highway already in existence or may run where highways will become a necessity, and they have the facilities and the ability to construct bridges, and that it is not unreasonable to impose upon them the burden of erecting bridges which, but for the construction of their roads would not be rendered necessary.

The first paragraph perhaps only contemplates the crossing of a previously constructed highway, and in such case, if it is necessary to raise or lower the highway, this must be done by the railroad company. If there is an omission in the statute to require the railroad companies to raise and lower highways and make easy grades in such highways as shall be constructed after the railroad is built, and if the legislative mind considered this feature of the case at all, it may have determined that it was a small matter to make these additions, and the

people could reasonably be expected to do this work when crossing previously constructed highways.

But when the statute comes to deal with the erection and keeping in order of bridges, there is no bridge which may be necessary to cross the railroad, whether upon a previously or subsequently constructed highway, which is not provided for by the statute which uses the all-embracing term, "all bridges on any highway."

In other words, the larger and more onerous duty of constructing bridges where necessary is always imposed upon the railroad, and justly so, because the necessity for such bridges is occasioned by the railroad's enjoyment of its franchise.

The construction of the statute contended for by appellant, that the railroad is not required to erect and keep in order bridges on previously constructed highways, is too narrow, and ignores the distinction between the two duties imposed by the statute and the public policy of the state finding expression therein, and requires that provisions not found therein be read into the statute. The rule of construction is to give life and meaning to each separate provision of the statute, and this can be done in this case without any sort of conflict either in the statute itself, the duties imposed by it, or the policy subserved by it. This question was raised by this very railroad company in the case of *Illinois Central R. R. Co.* v. *Willenborg,* 117 Ill., 203, re-reported in 57 Am. Rep., 862, and was decided adversely to the contention of the company. In that case the court used the following language: "The point is made, however, that these provisions are not obligatory on this corporation, because they were enacted many years since it received its charter from the state. This is a misapprehension of the law. The regulations in regard to fencing railroad tracks and the construction of farm crossings for the use of adjoining landowners are police regulations in the strict sense of those terms, and apply with equal force to corporations whose tracks are already built as well as those to be thereafter constructed.

They have reference to the public security, both as to persons and to property. All property devoted to public uses takes on a nature or qualification *quasi* public and is for that reason held to be subject to legislative control in a greater or less degree, and to which the mere private property of the citizen is not subjected. . . . The distinctions in this regard have been uniformly observed. It is for this reason that it has been frequently held that railroad corporations, notwithstanding no such right has been reserved in their charters, may be required to fence their track, to put in cattle guards . . . and do many other things for the protection of life and property. . . . No reason is perceived why, upon the same principle on which railroad corporations may be required to fence their track and construct cattle guards, they may not be required also to construct farm crossings. The one is as much required as the other for the convenience and safety of the adjoining landowners. . . . It certainly cannot be inferred that the legislature would irrevocably grant to a railroad corporation a franchise to construct a railway in such manner as to cut off all right of passage to and from the portion separated by the road-bed. The proposition that a corporation can construct a railroad from Galena to Cairo and cannot, under the police power of the state, be compelled to construct farm crossings over its tracks for the use of owners of lands over which it passes, is too absurd to be seriously considered. . . . The case of *Railroad Co.* v. *Bloomington*, 76 Ill., 447, is not analogous in its facts or otherwise with the case being considered, and is, therefore, no authority in support of the position taken by counsel in this case.''

In this connection I call the court's attention to the fact that counsel here quotes this same case which was held not to be analogous to the case of the *Illinois Central R. R. Co.* v. *Willenborg*, and it is no more analogous here than it was there, and no more authority in this case than it was in that.

In supporting the doctrine that the legislature had the power

to require the railroad company to erect farm crossings in the *Willenborg case*, the court used the following language: "The latter (meaning farm crossings and the necessity for their erection), could reasonably be anticipated when the railroad was constructed," and so here I insist that the railroad, in the acceptance of its charter knew that it could not so construct a road that in after years it might not become necessary to cross the same with a public highway, and when the railroad was so constructed as to require bridges to be erected in the future in order for the public to enjoy the benefit of the highways of the county, it was the duty of the legislature to require that the burden of constructing these bridges by the method of constructing the railroad should be borne by the railroad, and it was clearly within the power of the legislature to enact the statute referred to, and there is no room to doubt that the legislature intended to impose this burden upon the railroad company, and the judgment of the court below must be affirmed.

WHITFIELD, C. J., delivered the opinion of the court.

The agreed case is this: "For the purpose of the trial of the above-styled cause, and for no other purpose, it is agreed by the parties hereto that the road ordered to be constructed by the board of supervisors, hereto attached, is a new public road, laid out and opened by the board within the past year, and that the railroad has been constructed and operated for more than the last twenty years at the point where this new road crosses it, and where the bridge is ordered to be constructed by the board. It is further agreed that the bridge has not been constructed, and that the road is a public road, and regularly laid out by the board in conformity with the law, and that if § 3555 of the Code of 1892, embraces and requires the erection of bridges over a railroad previously constructed, on public roads newly constructed, and laid out after the railroad was built, then the railroad is liable in this suit, otherwise it is not, and that the bridge is necessary to the use of the road.   It is

agreed that the defendant shall not be estopped to dispute any fact above admitted in any other suit to enforce the order of the board for noncompliance with it.''

We think the latter clause of § 3555 of the code of 1892 applies to railroads constructed prior to its passage. We have examined carefully all of the authorities cited by counsel for appellant on this point. Very many of them simply declare the well-known common law rule, that, where a highway is constructed over a previously existing highway, the expenses involved in making the crossing must be borne by the person or corporation making the crossing, and that the crossing must be so constructed as to interfere as slightly as possible with public travel over the first highway. Others of these cases hold that certain statutes or charter provisions relied on as changing the common-law rule did not have that effect. We think it is very clear that § 3555 does change the common-law rule, and that the latter clause applies to railroads constructed before that section became a law, as well as to railroads constructed afterwards. It must necessarily have been within the contemplation of appellant's lessor when the road was originally constructed through Mississippi that as the state was opened up, and hamlets, villages, and towns built, and population in the interior increased, very many new public roads crossing the railroad would be demanded by the very largely increased needs of the people in the matter of travel over public roads. All this appellant's lessor must, of course, have contemplated; and it is not subjecting it to any unexpected burden, when the state, in the exercise of its police power, passed, subsequently to its construction, a statute requiring it to do what from the first it must have known the constantly increasing needs of the public as to travel would require it to do.

Appellant's second proposition—that, if this be the true construction of the statute, then it is unconstitutional, in depriving appellant of its property without due process of law, and in impairing its charter rights—is untenable. The supreme court

of Illinois, in the case of *Ill. Cent. R. R. Co.* v. *Willenborg*, 117
Ill., 203, also reported in 7 N. E., 698; 57 Am. Rep. 862, states
fully the doctrine on this subject.    The court says:    "This is
a misapprehension of the law.    The regulations in regard to
fencing railroad tracks, and the construction of farm crossings
for the use of adjoining landowners, are police regulations,
in the strict sense of those terms, and apply with equal force to
corporations whose tracks are already built, as well as those to
be thereafter constructed.    They have reference to the public
security, both as to persons and to property.    All property
devoted to public uses takes on a nature or qualification *quasi*
public, and for that reason is held to be subject to legislative
control in a greater or less degree, and to which the mere pri-
vate property of the citizen is not subjected.    Rights purely
and exclusively private, in no wise affecting others, and in no
way affecting public morals, are not regarded as being within
the control of the police power, nor can mere private property
be taken for public use without making the owner just com-
pensation; yet the law has always required the citizen to so use
his property as not necessarily to injure another, and, to com-
pel the observance of that rule, even private property may be
brought within legislative control to that extent.    But where
property belonging to a natural person or to a corporation be-
comes 'affected with a public interest, it ceases to be *juris
privati* only.'    Where a party devotes his property to a public
use, the community at large acquires such a qualified interest
as will subject it to legislative control for the common welfare.
Accordingly the property of railroads and other public corpo-
rations transacting business for and with the public has been
subjected to burdens not imposed on the owners of mere pri-
vate property, used purely and exclusively for private interests.
The distinctions in this regard have been uniformly observed.
It is for this reason it has been frequently held that railroad
corporations, notwithstanding no such right had been reserved
in their charters, may be required to fence their tracks, to put

in cattle guards, to place upon their engines a bell, and to do many other things for the protection of life and property. No public exigency has ever made it necessary to impose such burdens on the citizens exercising no functions or occupations in their nature public or *quasi* public. Railroad companies are public corporations, in a limited sense, although the right of way, roadbed, and the track thereon, are for the exclusive use of the owners, over which only their own conveyances are propelled. . . . The fact that railroad corporations are granted exclusive franchise to conduct a business in its nature public must subject them to all reasonable control to secure the public safety and welfare. It is now the settled law that railroad corporations are within the operation of all reasonable police regulations; otherwise there would be no security for the life or property of the citizen residing in the vicinity. . . . The case of *Ill. Cent. R. R. Co* v. *Bloomington,* 76 Ill., 447, is not analogous, in its facts or otherwise, with the case being considered, and is therefore no authority in support of the position taken by counsel in this case." All statutes like this, and statutes requiring roads to fence their tracks, and to establish farm cattle guards, etc., are plainly ascribable to the police power of the state for their justification.

*Affirmed.*