ILLINOIS CENTRAL RAILROAD COMPANY ET AL V. STATE OF
MISSISSIPPI EX REL., ETC.

[48 South. 561.]

1. SUPREME COURT PRACTICE. *Assignment of error. Peremptory instruction. Argument.*

An assignment of error predicated of a determinative peremptory instruction given by the trial court brings the case into review in the supreme court in all of its aspects, and neither party is confined in argument to points made in the trial court.

2. MUNICIPALITIES. *Laying out streets. Eminent domain. Code 1906, §§ 3337, 4400. Railroad track crossed.*

A municipality in laying out a new street, or extending an old one, crossing a railroad track, must, as provided in Code 1906, § 3337, adopt the procedure provided in Code 1906, ch. 43, relating to the subject of eminent domain; it cannot proceed in so doing under Code 1906, § 4400, relating to the laying out of highways by counties.

3. SAME. *Same. Viaduct. Bridge.*

A municipality cannot, by ordinance or otherwise, compel a railroad company to construct a viaduct over its track at a point where a street has not been legally laid out across the same.

4. CONSTITUTIONAL LAW.   *Constitution* 1890, *sec.* 17.   *Eminent domain*
   *Property.   Value.   Railroad right of way.   Street crossing.* ·

   Under constitution 1890, sec. 17, providing that private property
   shall not be taken or damaged for public use, except on due com-
   pensation first made:—

   (*a*) Every species of property of value, and every right or interest
   in property is included; and

   (*b*) The term, value, as applied to property, is the price deemed or
   accepted as equivalent to the utility of the thing; and

   (*c*) The law infers value from the term, property, and where no
   value is shown nominal value will be inferred; and

   (*d*) A municipality cannot take the right of way of a railroad
   company, or a part thereof, for a street crossing, except by emi-
   nent domain proceedings and due compensation.

FROM the circuit court of Lincoln county.

HON. MOYSE H. WILKINSON, Judge.

The State, *ex rel.*, etc., appellee, was plaintiff in the court be-
low; the railroad comoanies, appellants, were defendants there.
From a judgment in plaintiff's favor defendants appealed to
the supreme court.   The opinion of the court fully states the
facts of the case.

*Mayes & Longstreet,* for appellant.

The fact that the appellants were given no notice of the ac-
tion by the board of mayor and aldermen which consisted of a
subjection of railroad property to an additional servitude, is ad-
mitted in the record.

The ordinance of 1906 which extended Yellow Pine street
across the railroad right of way and tracks, and ended it on the
side of railroad right of way land on the east, was void and of
no effect because no notice of the pendency of such a proceeding
was given to appellant, the only parties in interest affected
thereby.

The property of corporations or private citizens cannot be
condemned in this state to any public use without notice to the
owner or owners.

In the chapter on Municipalities, Code 1906, § 3337, it is pro-

vided that towns and cities may exercise the right of eminent domain in laying out streets, avenues, alleys, parks, etc., and in the straightening or widening of streets, etc., and changing the grade therefor.

In the chapter on Eminent Domain, Code 1906, § 1854, full and specific instructions as to the proceedings in consideration cases are given.

The extension of Yellow Pine street could not be validly made without notice to the railroad companies over whose lands only it was sought to be extended. It has been repeatedly held that a statute providing for the taking of property of persons or corporations without just compensation, is unconstitutional, and it is a proposition about which there is no longer serious debate, that any order of expropriation by anybody or authority is void, unless the person or owner of the lands to be effected thereby, can have his day in court.

The court will readily see that if the ordinance of the year 1906 be held to be void, and of no effect, it is absolutely fatal to this proceeding, because, if the order of extension be void, there is no foundation on which to rest the ordinance requiring the building of an overhead bridge or viaduct. This last named order depending for its validity only a legal or entirely pre-existing extension of the street.

Whenever a city proposes to lay out or extend a new street it is incumbent on the city to secure the right of entry and use, either by private treaty with the owner, or in default of this, to condemn the property desired for the public use, by the exercise of the right of eminent domain.

*H. Cassedy,* for appellee.

The first question presented and discussed by appellants is that the ordinance of 1906, extending Yellow Pine street was void and of no effect as to them because no notice of the pendency of such a proceeding was given. Appellant's able counsel seek to make the turning point of this case depend upon the validity of the ordinance of 1906.

Article 17 of the constitution does protect private ownership of property, and even the state, the United States or any subdivision, or any public service corporation would be compelled to resort to eminent domain, if an agreement could not be reached. But, have we such a case? What shall we say with reference to a public highway? The railroad is as much a public highway as any of the county roads or city streets. It would be ridiculous to argue that in the event a city, in extending a street, say to a park beyond the city limits, should be required to notify the board of supervisors and pay the county damages for crossing the public roads. The very right to exercise the power of eminent domain by a public corporation is based upon the public use to which the private property will be subjected. I need not cite any authority to support a proposition so well and so long established. Once condemned or dedicated as a public highway is it necessary, or proper, or expedient, to require successive condemnations? Of course I am discussing the situation of a railroad company with reference to the public highways, and not the imposition of an additional servitude upon the fee in the soil, such as the erection of telephone wires on public roads, etc. On this proposition it is of some interest to know that the railroad company accepts its charter with the understanding that it must bow to the will of the legislature, or any lesser body clothed with the power, in the exercise of the police power. On this proposition, I respectfully call the attention of the court to the words of the opinion in *Illinois, etc., R. Co. v. Willenberg,* 117 Ill. 203 (7 N. E. 698, 57 Am. Rep. 862), referred to in our own case of *Illinois, etc., R. Co. v. Copiah County,* 81 Miss. 685, 33 South. 502.

"All property devoted to public use, takes on a nature or qualification quasi public, and for that reason is held to be subject to legislative control in a greater or less decree, to which the mere private property of the citizen is not subjected. . . . But where property belonging to a natural person or a corporation becomes 'affected with a public interest it ceases to be *juris*

*privati* only.' Where a party devotes his property to a public use the community at large acquires such a qualified interest as will subject it to legislative control for the common welfare. Accordingly the property of railroads and other public corporations transating business for and with the public has been subjected to burdens not imposed upon the mere private property used purely and exclusively for private interests."

In the case of *Illinois, etc., R. Co. v. Copiah County,* it seems the public road was laid out without any notice to the railroad company by the board of supervisors. In that case, as well as in the instant case, the bridge was the only thing required to preserve the continuity of the highway. The road, without the bridge would stop on either side of the railroad. See also *Illinois Central Railroad Co. v. Swalm,* 83 Miss. 631, 36 South. 147.

The state is clothed with the initial police power over roads and streets, and municipalities and counties are merely political subdivisions of the state and have such of these inherent powers as may be conferred or delegated by the legislature, and so, railroad corporations, as well as municipalities are "created solely by legislative authority and are clothed only with such powers as are expressly granted in the creative act which vitalizes and brings them into existence." *Canton v. Cotton Warehouse Co.,* 84 Miss. 268, 36 South. 266 (105 Am. St. Rep. 428).

MAYES, J., delivered the opinion of the court.

This is a proceeding by mandamus to compel the railroad company to construct a bridge across its right of way in the town of Boguechitto, beginning at the foot of Yellow Pine street. The facts on which it is sought to sustain this petition are as follows, viz.: The petition is filed by the district attorney, in behalf of the state, and recites that a large majority of the citizens of the town filed a petition with the mayor and board of aldermen thereof, praying that Yellow Pine street be opened and extended across the right of way of the railroad

company and that a bridge or viaduct be built across same.  At the next regular meeting of the mayor and board of aldermen succeeding the one at which the citizens' petition was received, the following ordinance was passed, viz. :

"Section 1.  Be it ordained by the mayor and board of aldermen of the town of Boguechitto, Mississippi, that the Illinois Central Railroad Company and the Chicago, St. Louis & New Orleans Railroad Company be and they are hereby required to erect, establish, and maintain across their tracks, where. Yellow Pine street crosses same, a substantial bridge or viaduct, to be erected and completed within three months from the time this ordinance becomes operative or effective, and thereafter keep the same in good repair.

"Sec. 2.  Be it further ordained that this ordinance take effect and be in force from and after thirty days after its passage."

This ordinance was passed some time in March, 1907, and, the railroad companies, one being the lessee and the other the lessor of the tracks, refusing to obey the ordinance and build the bridge, this proceeding was instituted to compel them to do so.  It is admitted that no notice was given to the railroad companies of the proposition of the municipality to open up Yellow Pine street across the right of way of the companies; but it is claimed that a copy of the above ordinance was served on the companies before its passage.  It clearly appears that in opening up this street a part of the railroad right of way is taken for street use.  In truth, the railroad companies seem the only property owners concerned in so far as property is to be taken for street use.  The railroad companies answered, denying every allegation contained in the petition, and considerable testimony was taken; but we do not deem it necessary to advert to it, since it is our view that very little of the testimony has any relevancy to the real question in issue.  No condemnation proceedings were instituted by the municipality, and no private agreement was had with the companies as to any damage that might be

done them by the taking of their right of way for other uses. At the conclusion of the case a peremptory instruction was. given for the municipality, and the railroad companies were ordered to build the bridge. On the motion for a new trial the granting of the peremptory instruction was assigned as error, and on appeal it is again assigned here. The case having been disposed of by the court by a peremptory instruction, this assignment of error brings into review the entire case, and this answers the contention of appellee that certain arguments are made here for the first time.

We do not consider the question of notice to the railroad companies. Since the municipality proceeded in an unauthorized way, no amount of notice could possibly affect any of the rights of the companies. It would seem that the mayor and board of aldermen were proceeding to open up Yellow Pine street under Code 1906, § 4400; but this section has no application to municipalities, and the procedure there outlined cannot be availed of by municipalities in laying out or changing streets. No other provision for any kind of eminent domain proceedings on the part of counties is to be found in the law save that provided for by Code 1906, § 4400, and this section has application to counties only, and is a substitute for eminent domain proceedings required to be resorted to by all other persons or corporations having the right to condemn private property for public use. This is made clear by referring to Code 1906, § 1854, which provides that "any person or corporation having the right to condemn private property for public use shall exercise that right as provided in this chapter, and not otherwise, except as specified in the chapters on 'Landings,' 'Mills and Milldams,' and 'Roads, Ferries and Bridges.' " Municipalities are not among the class excepted from the operation of the above statute; but, on the contrary, Code 1906, § 3337 gives a municipality the power to exercise the right of eminent domain in the laying out of streets, and, when a municipality undertakes to lay out a new street requiring the taking or damaging of property, it must.

proceed under the provisions of the chapter on eminent domain, "and not otherwise," as is expressly provided in Code 1906, § 1854.

We are not concerned with the reason why the legislature has made Code 1906, §§ 4400, 4401, and 4402, apply to county roads only; but it is manifest that the above sections do only so apply.   Many reasons might be given why the legislature so enacted the law for application of the statute.   Since the proceedings of the municipality in opening and extending the street were a nullity, it follows that the ordinance requiring the building of the bridge was also a nullity.   Code 1906, § 4053, confers no arbitrary power on counties or municipalities to require the building of bridges by railroad companies without reference to where they shall be built; but the bridges can be required to be built only at highway crossings, and there can be no highway crossing until a highway has been lawfully established.   It is undeniably true that property devoted to one public use may be taken and used for another, subject to limitations not necessary to be here specified; but, because property may be devoted to a quasi public use and affected with a public interest so to speak, such property cannot for that reason be taken from its owners, or damaged, for another public use, except upon due compensation being made to the owners thereof.   We know of no case in this state that has ever held contrary to this. Section 17 of the Constitution of 1890 stands as a sentinel, guarding the right of the private owner of property not to have same taken or damaged for public use, except upon due compensation being first made to the owner, however small may be the value of that taken, or slight may be the damage; and this is true, whether the taking or damage is at the instance of a municipality, county, or other person or corporation possessing eminent domain powers.

The importance of this section of the Constitution as affecting the welfare of the citizenry of the state cannot be too strongly emphasized.   The case of *Illinois, etc., R. Co. v. Com-*

*missioners of Highways of Town Mattoon,* 161 Ill. 247, 43 N. E. 1100, is a case almost identical with the case here. In the case just cited it was held that the laying out of a highway across a railroad right of way was the taking of private property for public use, entitling the railroad company to compensation therefor; and the court said, on page 251 of 161 Ill., page 1101 of 43 N. E.: "It is the mandate, both of the Constitution and of the statute, that appellant should be paid just compensation for its property taken. Property is the right and interest which one has in lands and chattels to the exclusion of others. The term 'property' includes every species of valuable right and interest. Value is the price deemed or accepted as equivalent to the utility of anything, and compensation is that which constitutes or is regarded as an equivalent. It is impossible to conceive of such a thing as property wholly separated from the element of value. From the very term 'property' the law infers some value; and, if no value is shown, the inference will be that it is the nominal sum of one cent, one penny, or one dollar. Just compensation to the extent of that value was an absolute and constitutional condition precedent to the exercise of the right to take property from the owner under the right of eminent domain." As to what is the measure of damage in such a case the court further said on page 252 of 161 Ill., page 1102 of 43 N. E.: "The measure of compensation is the amount of decrease in the value of the use for railroad purposes, caused by the use for the purposes of a street; such use for the purposes of a street being exercised jointly with the use of the companies for railroad purposes." The case of *Mobile, etc., R. Co. v. Postal Telegraph Company,* 76 Miss. 731, 26 South. 370, 45 L. R. A. 223, adopts the same rule. See, also, the case of *Paterson, N. & N. Y. R. Co. v. Mayor, etc., of City of Newark,* 61 N. J. Law, 80, 38 Atl. 689, in so far as it holds that the laying out of a highway across a railroad right of way is a taking of the property for public use, entitling to compensation therefor.

Nothing decided in the cases of *Illinois, etc., R. Co. v. Copiah County,* 81 Miss. 685, 33 South. 502, or *Illinois, etc., R. Co. v. Swalm,* 83 Miss. 631, 36 South. 147, in any way affects the questions involved in this case. In neither of the cases was any claim for damages made by the company for the taking or damaging of its property. In the *Copiah County case, supra,* the lawfulness of the highway was not challenged in any way, but the question was as to whether the county could require the construction of a bridge across the right of way of the railroad, at new highway crossings—the statute authorizing this to be done having been passed after the railroad was constructed; and the court held that the statute applied, no matter when the railroad was constructed or the highway first opened up. About the same question was involved in the *Swalm case, supra,* in so far as any question in that case bears any relation to the question here. Instead of the peremptory instruction for plaintiff, a peremptory instruction should have been given for defendant. On the very face of the petition the facts alleged would not warrant the granting of the mandamus.

*Reversed and remanded.*