NEW ORLEANS & N. E. R. Co. *v.* STATE HIGHWAY COMMISSION.

(Division B. Nov. 21, 1932. Suggestion of Error Overruled Jan. 2, 1933.)

[144 So. 558. No. 30124.]

Bozeman & Cameron, of Meridian, and R. W. Heidelberg, of Hattiesburg, for appellant.

346

348

**E. R. Holmes, Jr.,** Assistant Attorney-General, for appellee.

Argued orally by **Ben F. Cameron,** for appellant, and by **E. R. Holmes, Jr.,** for the state.

**Ethridge, P. J.,** delivered the opinion of the court.

This appeal involves the validity of an order entered by the Mississippi highway commission eliminating a grade crossing and compelling the construction of an underpass partially at the expense of the New Orleans & Northeastern Railroad Company. The case was appealed from the order of the state highway commission by a bill of exceptions to the circuit court, and from a judgment of that court sustaining the order of the highway commission, the case is appealed to this court.

The bill of exceptions starts off by reciting that at a term of the state highway commission begun and

held at the office of said commission, at which Hon. Brown Williams, Hon. J. F. Thames, and Hon. F. L. Linker, highway commissioners, and J. B. Burns, Jr., secretary, were present, the attorney for the commission offered and filed an order of the state highway commission passed at a former meeting of said commission in words and figures as follows: ''On motion of Mr. Thames and second of Mr. Linker, the attorney general of the state of Mississippi is hereby authorized to institute necessary proceedings against the New Orleans and Northeastern Railroad so as to force'' it ''to participate in the construction of an underpass near Picayune, Mississippi, on F. A. P. 116, Pearl River county. Reference is here made to Minute Book 4, page 1020.'' The secretary of the highway commission issued a citation which was served on the railroad company.

The railroad company filed a protest against said requirement, challenging the jurisdiction of the highway commission, saying that the proposed order was prohibited under the laws of the United States, particularly the Commerce Clause of the United States Constitution (art. 1, sec. 8, cl. 3), approved February 4, 1887, and the Transportation Act, approved February 28, 1920 (see 49 U. S. C. A., sec. 1 et seq.), and under the Constitution of Mississippi, and that any constitutional or statutory provision of the laws of Mississippi purporting to grant such jurisdiction to the state highway commission was pro tanto illegal, null, and void, as in contravention of the Commerce Clause and the Transportation Act of the Federal Congress. The protest then stated that the grade crossing was not dangerous and did not unreasonably impede traffic, and that an order to construct an underpass would amount to a taking or damaging of the railroad's property for public use without due compensation being first made therefor, in violation of sections 14 and 17 of the Constitution of Mississippi.

It will be seen from the objection to this order that no specific objection was mentioned as to the acquirement of the right of way across the railroad right of way, nor was it stated that the highway commission had not acquired a right of way across the railroad company's property.

On the hearing, evidence was taken, and it appeared that Highway No. 11 ran south parallel with the railroad to a certain crossing, and then turned almost at a right angle, and again turned south on the opposite side of the railroad and proceeded practically parallel with the railroad.

The crossing made two sharp curves, one a sixty-degree curve, and the other a forty-degree curve. When the right of way was reached in traveling the highway, a party could see some distance in either direction; the particular feet being given in the record. It was shown by the engineer of the highway department that owing to the curves made in this crossing, the attention of a motor vehicle driver would be necessarily on the operation of his car across this crossing, and that he could not see the approach of a train in one direction without practically turning his head around, and thus diverting his attention from the car he was operating.

It was shown in the evidence that at this point trains traveling on the railroad were frequently operated at high speed, fifty miles per hour, and that it would take only a few seconds for a train, visible at this point, to reach such crossing.

The highway engineer and others testified that it was a dangerous crossing; and witnesses for the railroad company testified that it was as safe a crossing as any others.

The project for the underpass, however, did not involve the making of an underpass at this crossing, but involved changing the highway from its present location to a point north of this crossing where an underpass could be constructed through an embankment over which

the railroad track would run, thus eliminating a grade crossing, and after passing through this proposed underpass, the highway would proceed practically parallel with the railroad to a point opposite the existing crossing, and thence south in the direction of New Orleans.

It was shown that the highway commission had acquired a right of way for the new part of the highway to the proposed underpass. It inferentially appears that a right of way across the railroad's right of way had not been acquired, but no point was raised at the hearing of this failure, if it was a failure, to acquire a right of way across the railroad's right of way.

It does not appear from the bill of exceptions whether or not the right of way had been acquired across the railroad's right of way previous to the order of the highway commission above recited. If it was a fact, and was pertinent to the inquires, we think this point should have been made at the hearing before the highway commission.

One of the grounds for reversal urged here, but no raised before the highway commission, nor in the circuit court, is that the commission did not have the power to order an underpass until the right of way had been acquired across the railroad's right of way, and the road duly opened. The appellant relied on the case of I. C. R. R. Co. v. State, 94 Miss. 759, 48 So. 561.

We do not think the appellant is in a position to raise this point here. It does not appear from the bill of exceptions that the point was raised in the proceeding before the highway commission, nor in the circuit court. We must presume, in the absence of a clear showing to the contrary, that all precedent steps necessary to the conferring of power upon the highway commission had been taken. If in fact the right of way for the highway over the railroad's right of way had not been acquired, and it had been seasonably raised, the highway commission would, no doubt, have taken the necessary steps to acquire such right of way over the railroad's right of way; and the appellant will not be permitted to

rely upon questions not then raised. It was the duty of the appellant, if it desired to contest the order upon this point, to have made objection during the progress of the hearing. Not having done so, it will be held to have waived such objection.

It is contended that section 5007, Code 1930, does not confer upon the highway commission the power to order an underpass or overpass at any other point than that which existed formerly. In other words, that the commission did not have the right to order an underpass where it is proposed to be constructed, but that the commission was confined to construct an underpass at the crossing as it then existed.

We think this contention is without merit. The proposition involved—and both parties were fully heard upon it—is the necessity of an underpass, and the change of the public highway so as to better conserve the public safety.

It is not necessary, in order to eliminate a crossing, that an overpass or underpass, as the case may be, shall be constructed at the very point where the existing crossing is. The commissioners must be given some latitude in constructing a great public highway for inter-county and interstate traffic, and leave to change the location of any highway so as to make a shorter road, or to straighten the road, thus making a more practical and worthy route of travel.

We think, therefore, that the highway commission had jurisdiction to establish an underpass at a different point from that at which the highway at present crosses the railroad.

We think the other questions presented are settled adversely to the contentions of the appellant in the case of Erie R. Co. v. Bd. Public Utility Com'rs, 254 U. S. 394, 41 S. Ct. 169, 171, 65 L. Ed. 322, 331. That case holds that a state may, consistently with the due process of law, commerce and contract clauses of the Federal Constitution, require a railroad corporation engaged in

interstate commerce to abolish, at its own expense, highway grade crossings, including those at streets, whatever the cost and without regard to financial ability, if it can be reasonably said that the public safety required the change.

The evidence, we think, is sufficient to show that the crossing, on account of the curves, is a dangerous crossing.

It is true that the appellant showed losses in operation. This situation of the railroads and their losses, owing to motor vehicles upon improved highways, is a matter of grave concern for the future of the railroads; but it is necessary that they be operated with regard to the public safety, and the elimination of dangerous situations may save the railroads considerable sums in damage suits, resulting from accidents at crossings.

In the case before us, a single personal injury suit resulting in the death of persons might cost the railroad more than the assessment against it for the construction of the underpass.

In the case of Erie v. Bd. of Public Utility Com'rs, supra, the court observed that: "If we could see that the evidence plainly did not warrant a finding that the particular crossings were dangerous, there might be room for the argument that the order was so unreasonable as to be void. The number of accidents shown was small, and if we went upon that alone, we well might hesitate. But the situation is one that always is dangerous. The Board must be supposed to have known the locality, and to have had an advantage similar to that of a judge who sees and hears the witnesses."

After giving due consideration to the whole case, we are of the opinion that there is no reversible error, and that the judgment must be affirmed.

Affirmed.