Hook *et al.* v. The Chicago & Alton Railroad Company, *Appellant.*

Division One, March 10, 1896.

1. **Railroad:** EASEMENT: PROPERTY: COMPENSATION. The easement which a railway company enjoys is "property" within the meaning of the organic law as to "just compensation."

2. ———: PUBLIC HIGHWAY: CONDEMNATION: COUNTY COURT: PRACTICE: APPEAL. In a condemnation case to open a public highway which is to cross a railway line, an appeal from the county court may be taken under section 7801 (R. S. 1889), on the question of damages for property taken, before the final order opening the road.

3. ———: ———: ———: BENEFITS. That a railroad would kill less cattle at a public, than at a farm, crossing, because the gates at the latter are "not always kept shut," does not establish a legal basis to assess "benefits" against the railroad company, nor does the fact of greater convenience of access by the people to another road leading to a station on defendant's line show such benefits from a projected public road.

4, ———: ———: ———: ———. Only benefits peculiar to the property against which they are assessed can be taxed against it in a road condemnation case.

5. ———: ———: ———: ———: EVIDENCE. Opinions of witnesses that property is benefited by a public road are not alone a foundation for a finding of "benefits," unless accompanied by facts showing some legal basis for the opinions.

6. ——: CONDEMNATION: BENEFITS: INSTRUCTION. An instruction authorizing a finding of "benefits" to a property owner, without evidence to support the finding, is erroneous, and a ground for reversal unless it can be shown to be harmless.

7. ——: ——: IMPROVEMENTS: DAMAGES. Both parties in the trial court assumed in this case that the railway company was entitled, as damages, to recover the expense of putting in all required statutory improvements at the proposed crossing of the public road and railway line. .

*Appeal from Callaway Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

REVERSED AND REMANDED.

*Bailey & Tincher* for appellant.

(1)    The trial court should have allowed the witness, T. H. Hubbard, to testify as to the grade and course of the railroad at and adjacent to the point of the crossing of the county road. With a heavy grade and sharp curves at this point the disadvantages to the defendant might be far in excess of any advantages that could possibly accrue. To show such grade and curves was the object of offering such testimony. (2)    The court erred in permitting the witness, M. Messersmith, to testify that the advantages were equal to the disadvantages, to defendant, in opening the road, against defendant's objection, inasmuch as said witness was unable to point out any advantage whatever that would result to defendant. The fact that gates were left open is no fault of defendant, and defendant would not be liable for cattle killed by reason thereof. R. S. 1889, section 2611. (3) The court erred in refusing instruction number 2, as asked by defendant. The first cost of putting in the crossing is not the full measure of defendant's damages. (4) The court erred in giving the instruction asked by the

plaintiffs. The same does not properly declare the law. It is in conflict with the statutes. R. S. 1889, section 2609, and section 2614. (5) The court erred in overruling defendant's motion for new trial. The verdict is not only against the evidence, but is manifestly the result of prejudice and passion, and should not be allowed to stand. (6) The appeal was properly allowed by the county court at the time it was taken. R. S. 1889, sec. 7801; *Railroad v. Railroad*, 94 Mo. 542. (7) A railroad company is entitled to compensation for damages to its franchise, track, etc., sustained by the extension of public highways across its right of way, as well as other parties. 7 Lawson's Rights, Remedies, etc., page 6130, and authorities cited. And the measure of damages is a sum sufficient to put and keep its embankments, tracks, etc., in as safe condition as before, and to compensate it for any additional injury to its franchise or expense attending and incidental to the occupying of its right of way. 7 Lawson's Rights and Remedies, p. 6139, sec. 3896; *Railroad v. Railroad*, 96 Ill. 274; *Railroad v. Railroad*, 62 Mich. 564. (8) Appellant holds its franchise under the act of 1868, which does not require it to make new crossings, and which antedates the present law. Laws, 1868, pp. 97 and 102, sec. 17.

*N. D. Thurmond* with *D. H. Harris*, prosecuting attorney, for respondents.

(1) This case was appealed from the county court on the trial of the question of damages, by a jury, under section 7799 of Revised Statutes, and before there was a final judgment of the court condemning the land for road purposes, and, therefore, the appeal should be dismissed. *Railroad v. Railroad*, 94 Mo. 540; R. S. 1889, secs. 3434, 7801; *Long v. Talley*, 91 Mo. 305; *State ex*

*rel. v. Edwards*, 104 Mo. 125.    (2)  The only damages a landowner is entitled to is the value of the land taken and the injury to the part of the tract not taken.  A public road crossing a railroad track does not deprive the railroad company of the use of its land, and, therefore, can not damage it.  The only damage claimed by the railroad in this case is the cost of making the crossing, putting in necessary cattle guards, and fencing.  The law requires railroads to do this at all crossings or roads "now or hereafter to be opened." All railroad companies accept their charters with this provision of the statute as an incumbrance upon their franchise.  There is no more reason for paying railroads damages for opening new roads over their right of way than to pay them to make crossings for roads established before the building of the railroad.  R. S., section 2609.  (3)  The verdict of the jury was in accordance with the evidence in the case as will fully appear from reading the testimony preserved in the bill of exceptions.

BARCLAY, J.—This is a condemnation proceeding begun in the county court of Callaway with a view to establish a local road, which crosses in its course the railway line of defendant.  Mr. Hook and others are petitioners for the road.

The county court after the usual preliminaries (R. S. 1889, secs. 7796, 7797) appointed commissioners to assess the damages resulting from the establishment of the proposed road across defendant's land or "right of way."  The commissioners assessed $10 damages in favor of the defendant.  The latter filed exceptions; and, upon a jury trial in the county court, a verdict for defendant for the same sum was rendered.

Defendant appealed to the circuit court, where the cause was again tried with the aid of a jury, who

found that the railroad company should recover nothing. This finding was confirmed by the court in a judgment, from which defendant appealed.

The appeal from the county court was taken before any final order there, declaring the road opened or established.

At the trial in the circuit court defendant offered testimony tending to show that the actual cost of putting in necessary improvements required by law at such a railway crossing would be more than $150.

The plaintiffs' own evidence on the same subject showed that such cost would exceed $100.

The testimony for the defendant company showed all the items of cost of the improvements that would be necessary, including among them two cattle guards (see section 2611) at $84.26 and fencing at $18.89, besides the materials and labor required for the crossing proper under section 2609 (R. S. 1889).

The plaintiffs made an attempt to prove that defendant would derive certain benefits or advantages from the new road.

As the rulings on this branch of the case have an important bearing on the result, we present a copy of all the evidence on that subject.

Mr. Hook testified:—"I think it would be an advantage to the company to have the road opened there on account of the gateway. The gates are generally open and stock sometimes get hemmed in there and are killed by the cars, and if they had guards and a good crossing they would not get hemmed in and fewer would be killed, and it would give the people an outlet to the Burges Mill road which leads to Carrington where they do their railroad business. I think it would be more of an advantage than a disadvantage to the railroad."

Other witnesses testified, substantially, to the same effect; among them Milton Messersmith, as follows:

Q. "Considering the advantages and disadvantages that would accrue from opening this road, what do you think the railroad would be damaged?"

To this question defendant objected on the grounds that it does not define the advantages that may be considered as offset to damages, nor has it appeared from the evidence of the witness that any advantage would result to defendant from opening the road, which objection the court overruled, and defendant excepted.

In answer to this and similar questions, witness said:

"Well, I think if there was any stock running across that place, I would consider it to their interest to put in something there. I believe it would be to their interest to put in the cattle guards and other things. I am one of the petitioners."

B. F. Herring testified, substantially, that advantages would exceed disadvantages, and on cross-examination testified, to quote the record, "that he was basing his estimate on the fact that stock gets in there and is killed, and then the railroad company has to pay for them; that the cattle would not get in there if the gates were kept shut, but they are not always kept shut."

This was all the testimony.

The court then gave an instruction, at defendant's request, to the effect that the company was "entitled to damages sufficient to construct a cattle guard on its roadbed on each side of said public road; also, to fence each side of said public road from the edges of its right of way to said cattle guards; also, to provide and nail in place plank at least two inches thick, ten inches wide, and sixteen feet long on each side of the rails on the track of said railway;" etc., specifying the various items of improvement required by

law of defendant at that point, in case the road were established as proposed.

The court gave, on plaintiffs' motion, the following instruction, to wit:

"The court instructs the jury that railroad companies are required to make and maintain crossings over the track or roadbed, and such approaches to the track as will enable persons and animals to pass freely and easily over such track and such corporations are not required to grade and macadamize the whole distance from the track to the outside of the right of way of such railroad corporations. That the jury is the judge of the extent of the approaches and the grade and gravel or macadam necessary in each case to make a good and sufficient crossing, except such gravel or macadam must be not less than six inches deep. In estimating plaintiffs' damages, the jury may estimate the cost of four planks of not less than ten inches in width, two inches in thickness, and sixteen feet in length, of good sound timber and the cost of filling between the inside planks with macadam or gravel even with the top of the plank and of making good and sufficient approaches thereto of equal width therewith and of easy grade and of covering said approaches with gravel or macadam to a depth of not less than six inches. After estimating the damages as aforesaid, together with necessary cattle guards, fencing, sign boards, and culverts, and the advantages to the railroad by reason of the opening of the proposed road over defendant's right of way, if the jury finds that the advantages to the railroad are greater or equal to the damages sustained, the verdict should be that the C. & A. Railroad recover nothing, but if the damages are more than the benefits, the jury should find for the plaintiff in the sum equal to the excess of the damages over the benefits. In estimating plaintiffs' benefits the

jury should consider only such benefits as are peculiar to the railroad and not such as are common to the other landowners in the vicinity of such road,'' to the giving of which defendant at the time objected, and duly saved its exception.

(The use of the words plaintiff and defendant in this instruction is evidently inadvertent, as both parties here concede.)

Some minor facts will be mentioned in the course of the opinion.

. 1.   Plaintiffs insist that defendant's present appeal is untenable because the appeal from the county to the circuit court was premature.   The county court, it is true, made no final order for the road.   It was not bound to do so before an appeal could be taken on the question of damages.   The latter issue, under the statute (section 7801) regulating appeals in this class of cases, may properly be determined finally before those interested in obtaining the road (or the county court) need decide on the alternative courses open under section 7800 of the road law in force when this action was begun, in 1892.   Section 7801 undoubtedly permits an appeal at that stage of the proceeding, and we think its language too clear to require further discussion.

2.   The instruction given at plaintiff's instance assumed that there was testimony to sustain a finding that defendant would be benefited by the proposed county road.

An instruction should be based upon facts in evidence.   Where such is not the case the instruction is erroneous, and it forms ground for a reversal unless it can then be shown to be harmless.

We are of opinion that the testimony above quoted does not tend to prove any peculiar or special benefit to the defendant company that could form a

basis for reducing the actual "damages" which defendant's testimony was offered to prove.

The opinions of the witnesses that defendant was benefited did not (standing alone) amount to proof of benefit. Such opinions may sometimes be tolerated, in this sort of proceeding, if accompanied by some facts that tend to give a foundation to the opinions. *Spencer v. Railroad* (1894) 120 Mo. 154 (23 S. W. Rep. 126). But of themselves they are too unsubstantial to warrant a finding.

The defendant objected to such evidence (in the manner already noted), and demanded that the supposed advantages should be pointed out. The only effort to point them out was in the testimony that the railroad company would probably kill less cattle with its trains at the contemplated public crossing than at the farm-crossing now located at the point in question. But that conjecture was admittedly based on the theory that the farm crossing gates were "not always kept shut," a condition that could not properly be chargeable to the defendant company, so far as this record discloses. The greater convenience of access of the people to another local road, leading to a station of defendant (as suggested by Mr. Hook) does not show any benefit peculiar to the defendant. *Hickman v. Kansas City* (1894) 120 Mo. 110 (25 S. W. Rep. 225); *Old Colony, etc., Railroad Co. v. Inhabitants* (1859) 14 Gray 155.

No facts are given in the record which could reasonably furnish a legal foundation for the finding that the defendant is entitled to no damages because of special benefits to be derived from the projected county road. The finding by the jury of "no damages" is without support, as was also the instruction which permitted a finding of that sort.

The plaintiffs' instruction above quoted assumes (as did the instruction given on behalf of the company) that defendant is entitled to recover damages to the extent of the necessary expenses of putting in the required statutory improvements at the crossing. (Compare *City of Kansas v. Belt R'y Co.* (1890) 102 Mo. 633, 14 S. W. Rep. 808.) But the error it contains lies in the attempt to give defendant "just compensation" in the shape of benefits which are wholly mythical, having no substance in fact so far as this record shows.

The state constitution guaranties "just compensation" for the use by the public of that part of the railway property over which the proposed road is designed to run. The easement which the railroad company enjoys is "property," within the meaning of the organic law. Defendant, no less than other property-owners, has the right to insist upon compensation therefor of a more substantial kind than the benefits or "advantages" that were allowed to cut down its "damages" in this case to zero.

On the case as made in the present record, the learned trial court should not have sanctioned a finding of special benefits against defendant.

For the reason indicated, the judgment should be reversed and the cause remanded to the circuit court for a new trial. BRACE, C. J., and MACFARLANE and ROBINSON, JJ., concur.