GRANT OYLER V. GEORGE H. ROSS.

FILED APRIL 21, 1896.   No. 6507.

1. **Highways**: PETITION TO OPEN: COUNTY BOARD. A petition is not essential to confer jurisdiction upon a county board to open section line roads under section 46, chapter 78, Compiled Statutes. The only limitation upon the discretion of the board in that respect is the fundamental one of compensation for private property taken or damaged. *Rose v. Washington County*, 42 Neb., 1, followed.

2. ———: ORDER TO OPEN. An order of a board of supervisors instructing the county clerk to cause a section line road to be resurveyed and to enter such survey when made of record is not an order for the opening of such section line road within the meaning of said section 46.

3. ———: DEDICATION OF LAND: EVIDENCE. The evidence examined, and *held* to sustain the finding of the district court that the defendant in error had not dedicated certain real estate to the public for use as a highway.

ERROR from the district court of Saline county. Tried below before HASTINGS, J.

*J. H. Grimm* and *E. W. Metcalfe*, for plaintiff in error.

*Hastings & McGintie*, contra.

RAGAN, C.

George H. Ross owned the southwest quarter of section 27, in township 6 north and range 4 east of the sixth principal meridian, in Saline county. He built a post and wire fence along the west side of said quarter section of land. The fence stood less than thirty-three feet east of the north and south section line dividing sections 27 and 28 in said township. Grant Oyler, without Ross' permission, tore down this fence and drove over the cultivated grounds and crops of Ross. For tearing down the fence and driving over his ground and crops Ross sued Oyler for damages in the district court of Saline county. Ross

had a verdict and judgment, to reverse which Oyler prosecutes to this court a petition in error. Oyler admitted the tearing down of the fence and driving over the lands of Ross, but pleaded as a defense to the action that the land on which the fence stood, and over which he drove, was at that time a part of "a public road duly laid out and established by continuous use by the public long prior" to the date he tore down the fence.

1. On the 25th day of August, 1884, a number of gentlemen petitioned the board of supervisors of Saline county to establish a road extending north and south on the section line between sections 27 and 28 above mentioned; thereupon the county clerk of said county appointed a commissioner to examine into the expediency of the proposed road and to report accordingly. The commissioner accepted the appointment, viewed the line of the proposed road, and made report to the supervisors that in his judgment it was expedient to establish the road petitioned for. Notice was duly given of all these proceedings and a day fixed for the filing of claims for damages by reason of the proposed establishment of said road. Prior to the date fixed for parties to file their claims for damages a large number of claims were filed with the county clerk of said county. A remonstrance was also filed against the establishment of the road prayed for in the petition. Appraisers were appointed to assess the damages sustained by adjoining proprietors in case the road should be established. These appraisers acted and filed their reports, and upon a hearing of the petition and remonstrance the board of supervisors made an order rejecting the petition. On the trial in the district court Oyler offered in evidence a certified copy of the records of the board of supervisors of Saline county showing the matters just above stated. This evidence the court excluded, and this action of the court is the first assignment of error argued here. The certified copy of the records offered shows that all the proceedings were in due form, but the court did not err in refusing to admit

this evidence, for two reasons: (1.) The evidence was not relevant under the pleadings. The averment of the answer is that the land on which Ross' fence stood was a part of the public road, which the public had acquired by user. The plea was not that a public road had been laid out over the land of Ross by the authorities of Saline county, in pursuance of a petition and other proceedings provided for by chapter 78, Compiled Statutes. (2.) If such had been the plea, the evidence offered did not tend to prove it, as that evidence showed that the authorities of Saline county rejected the petition, and, so far as the record shows, they never did anything further in the premises.

2. After the rejection by the authorities of Saline county of the petition aforementioned, the board of supervisors of said county made the following order: "The clerk is instructed to cause the following described road * * * running south on the section line between sections * * * 27 and 28 * * * to be resurveyed, enter such survey when made in the proper record, and plat the same on the road plat book of the county." Oyler on the trial of the case at bar offered in evidence a certified copy of this order. The court excluded the evidence offered, and this action of the court is the second assignment of error argued here. Section 46, chapter 78, Compiled Statutes, so far as material here, provides: "The section lines are hereby declared to be public roads in each county in this state, and county boards of such county may, whenever the public good requires it, open such roads without any preliminary survey and cause them to be worked in the same manner as other public roads." The contention of counsel for plaintiff in error seems to be that since the north and south section line between sections 27 and 28 was by statute made a public highway, the order of the board of supervisors offered in evidence amounted to an order on the part of the board to open and work the road along said section line. We do not agree with this contention. The language of the

statute is that "the county board of such county may, whenever the public good requires it, open such roads without any preliminary survey and cause them to be worked in the same manner as other public roads." But the order offered in evidence is not an order of the board to any one to open and work the road along the section line between sections 27 and 28. The order, then, was irrelevant under the pleadings, for the reason already stated and for the further reason that it did not tend to prove that a public road had been ordered opened and worked between sections 27 and 28. We are not discussing the authority of the county board to make an order opening roads on section lines. There is no doubt but that the county boards have the authority, whenever in their judgment the public good requires it, to open and lay out public highways along the various section lines, and a petition is not essential to confer jurisdiction upon them for that purpose. The only limitation upon their discretion in the matter is the fundamental one of compensation for private property taken or damaged. (*Rose v. Washington County*, 42 Neb., 1.) But the evidence offered by the plaintiff in error and excluded by the court did not show, or tend to show, that a public road had ever been established on the north and south line between sections 27 and 28, by the board of supervisors, in pursuance of a petition filed with them for that purpose; nor that the board of supervisors of that county had ever ordered the road, located along said section line by virtue of the statute, to be opened and worked.

3. The final assignment of error argued is that the judgment rendered is contrary to the evidence and the law of the case. This argument is based on the contention that the evidence shows that at the time Oyler tore down the fence of Ross the public had acquired by user a public road over the lands on which the fence stood. The evidence shows that for some fifteen or twenty years the public has traveled north and south along the section line between sections 27 and 28; that this travel-way is

from eight to twelve feet wide; that road overseers have sometimes done some work along this travel-way, but no part of the fence torn down by Oyler was on this travel-way; that Ross had been in possession of his land for some eight years; that he and his grantors had always cultivated the land up to the line where the fence stood; that at the time Oyler tore down the fence the land east of it was planted to crops. Now it may be that Ross and his grantors, by their conduct in permitting the public to pass and repass along the section line on this travel-way, of the width of eight or twelve feet, and by not exercising or attempting to exercise any control or dominion over such travel-way, may be estopped from claiming that such travel-way is not a public road; but there is no evidence whatever in the record before us which shows, or tends to show, that Ross had ever dedicated, or intended to dedicate, to the public any part of the land on which his fence stood, or the land east thereof; and had the jury found that he had dedicated such lands to the public for the purposes of a highway, the finding would have lacked support in the evidence. In *Rube v. Sullivan*, 23 Neb., 779, a party owning land in fencing the same left a strip along the section line a rod or more in width, apparently for the use of a public road, and it was traveled as such, but there was no proof of dedication or an intention to dedicate any of the land within the inclosure, and the court held that "without such proof the jury would not be justified in finding that any of the land within the inclosure had been dedicated to public use, and therefore a road overseer who removed the fence as an obstruction to the highway would be liable for the trespass." The judgment of the district court is

AFFIRMED.