ST. LOUIS & S. F. R. CO. v. LOVE *et al., Corporation Commission of Oklahoma.*

No. 2622.   Opinion Filed September 26, 1911.

Rehearing Denied October 24, 1911.

(118 Pac. 259.)

**RAILROADS—Establishment of Highway Crossings—Authority of Corporation Commission—Writ of Prohibition.** The jurisdiction to open public highways and crossings over railway rights of way is vested in the local authorities and not in the Corporation Commission of the state; and, where no highway or crossing has been lawfully established and opened over the right of way of a railroad, the said Commission has no jurisdiction to determine the character of the crossing to be provided, and require its installation, and, where in such a case it makes an order requiring a specific kind of crossing, jurisdiction is vested in this court to issue a writ of prohibition to prevent its enforcement.

(Syllabus by the Court.)

Application by the St. Louis & San Francisco Railroad Company for a writ of prohibition against J. E. Love and others, members of the Corporation Commission of the State of Oklahoma. Writ granted.

*W. F. Evans* and *R. A. Kleinschmidt,* for plaintiff.

*Charles West,* Atty. Gen., for defendants.

DUNN, J.   This is an original action in this court for a writ of prohibition, brought by plaintiff, one of the public service corporations doing business as a common carrier in the state, against the defendants, constituting the membership of the Corporation Commission.

At some time, the date of which is not made to appear, the officers of Lynn Lane township, Tulsa county, filed in the office of the said Commission, a complaint, alleging that plaintiff was operating a line of railroad within the state of Oklahoma which intersected one of the section lines running north and south within the said township. That the said line was by resolution of the said township board, on the 1st day of November, 1909, ordered opened and put in condition for public travel. That

in furtherance of the said resolution one of the road overseers of the said township served upon said plaintiff company a notice in writing to construct and maintain a crossing over its right of way where the same was intersected by the section line; the notice being to the effect that the plaintiff should construct a crossing across that portion of its right of way over which the public highway runs on the section line (describing it), commanding it to maintain the same unobstructed and in good condition for the use of the public. The said petition then averred that, notwithstanding the notice, the company had neglected and refused to comply therewith, and that the highway was still unopened and obstructed by said railroad company. It was in the said complaint further represented that, owing to the elevation of the track, a grade crossing at that point would be difficult to construct and maintain, and that, owing to the height of the approaches, it would be a constant menace to the public welfare and safety. Further facts showing the desirability and necessity for the said crossing were also set forth. A day for the hearing of the petition was fixed, and evidence taken, in which the facts of the petition were sustained by the evidence, and on December 9, 1910, an order of the Corporation Commission was made, which provided that the company should construct a subway crossing at the intersection of its road with the said section line, and that the same should be constructed of such dimensions as might be determined adequate and safe by the said company; the plans and specifications therefor to be submitted to the Commission for approval. From this order the railway company sought to appeal to this court, which appeal, after being lodged herein, was, on May 9, 1911, upon due consideration, dismissed, for the reason that the order was one from which, under the law, no appeal would lie. Thereafter, and on May 23, 1911, plaintiff brought this action to secure a writ of prohibition, which it prayed should be directed to the defendants, commanding them to desist and refrain from any further proceedings looking to the carrying out of the said order.

Counsel for plaintiff rely upon two propositions, which may

be stated as follows: First, that the Corporation Commission is without authority or jurisdiction to require the construction of the crossing mentioned in the order, for the reason that no road or highway has ever been legally opened or extended over plaintiff's right of way, in which it is claimed plaintiff owns a fee-simple title; and, second, that the Corporation Commission has no authority to regulate the crossing of public highways and rail-roads.

The first proposition necessary for us to determine is, Was there in fact a public highway opened over and across plaintiff's right of way? If there was no such highway opened, the Corporation Commission could not, by the order requiring the company to construct an overhead crossing, compel the opening or the establishment of a highway. *Illinois Central Ry. Co. v. State ex rel.*, 94 Miss. 759, 48 South. 561. The law on this subject is well stated by the Commission in its opinion rendered in *Swarts et al. v. St. Louis & San Francisco Railroad Company* (1st Annual Report, p. 127), wherein it is said:

"The law provides how all streets and public roads may be declared highways across railroad rights of way. The Commission has no jurisdiction, except such as expressly or by necessary implication is conferred upon it by law. The laying out or opening of highways or streets is not one of the duties enjoined upon the Commission. The Commission has the power and authority, after such highway or street crossing is legally established, to require the railroad company to establish such crossing as may be necessary for the safety of the public."

See also unpublished opinion of Corporation Commission in *Cooper et al. v. C., R. I. & P. Ry. Co.*

We will, therefore, first determine the question of whether there was in fact an opened highway.

The plaintiff is the successor of the Atlantic & Pacific Railway Company, which secured its right of way by and under an act of Congress of July 27, 1866 (14 Stat. 294, c. 278), section 2 of which reads as follows:

"That the right of way through the public lands be, and the same is hereby, granted to the said Atlantic & Pacific Railroad Company, its successors and assigns, for the construction of a

railroad and telegraph as proposed; and the right, power, and authority is hereby given to said corporation, to take from the public lands adjacent to the line of said road material of earth, stone, timber, and so forth, for the construction thereof. Said way is granted to said railroad to the extent of one hundred feet in width on each side of said railroad where it may pass through the public domain, including all necessary grounds for station-buildings, work-shops, depots, machine-shops, switches, sidetracks, turntables, and water-stations; and the right of way shall be exempt from taxation within the territories of the United States. The United States shall extinguish, as rapidly as may be consistent with public policy and the welfare of the Indians, and only by their voluntary cession, the Indian title to all lands falling under the operation of this act and acquired in the donation to the road named in the act."

One of the contentions of the Attorney General is that under this grant the railroad company took its right of way subject to the implied, reserved power in Congress to require the allowance of free public highways over and across the right of way of any railroad subsequently constructed thereon; and this claim, it is contended, finds support in the provisions of an act of Congress of July 26, 1866 (14 Stat. 251, 253, c. 262), providing that "the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted"; the contention being that, inasmuch as the act granting the franchise and right of way to the Atlantic & Pacific Railway Company was not adopted until the day after the adoption of the section to which reference has just been made, the company took its franchise and right of way subject to this provision, which reserved a right of way for the construction of highways over the railroad grant. After the acceptance of the grant and the construction of plaintiff's line of railway, Congress, on July 1, 1902, passed an act (Act July 1, 1902, c. 1375, 32 Stat. 716) entitled "An act to provide for the allotment of the lands of the Cherokee Nation, for the disposition of townsites therein, and for other purposes," section 37 of which provided that "public highways of roads two rods in width, being one rod on each side of the section line, may be established along all section lines

without any compensation being paid therefor, and all allottees, purchasers, and others shall take the title to such lands subject to this provision," and the claim is made that this act, in conjunction with the other, on becoming operative was self-executing, and established and opened over and across plaintiff's line of road a public highway. In these contentions we are unable to concur, for the courts appear to have uniformly held that section 8 of the act of July 26, 1866, *supra,* wherein Congress provided for a right of way over public lands for the construction of highways, amounted to an offer only on the part of the government of so much of the public lands as was necessary for the construction of highways, and hence, of course, did not in itself amount to a reservation in the grant which was made to this company of any land included within its right of way. The statute constituted a standing offer of a free right of way over the public domain which, as soon as accepted in some lawful manner by the agents of the public, or by the public itself, established a right to a highway; but prior thereto it simply amounted to a standing consent or offer on the part of the government that any of its lands, not reserved for the public purpose, might be taken and used for the people's highways. *Van Wanning v. Deeter,* 78 Neb. 284, 112 N. W. 902; *Streeter v. Stalnaker,* 61 Neb. 205, 85 N. W. 47; *Tholl et al. v. Koles,* 65 Kan. 802, 70 Pac. 881; *Walbridge v. Board of County Com'rs of Russell County,* 74 Kan. 341, 86 Pac. 473.

While it is true that under grants of this character the fee in and to the land involved is not vested in the railway company (*Union Pac. Ry. Co. v. Kindred,* 43 Kan. 134, 23 Pac. 112), still the interest which was granted appears to have been something more than a naked easement, for it is spoken of by the Supreme Court of the United States, in the case of *New Mexico v. United States Trust Co.,* 172 U. S. 171, 185, 19 Sup. Ct. 128, 43 L. Ed. 407, as being real estate of a corporeal quality, and it was held therein that the principles relating thereto applied. At the time of the passage of the act of July 1, 1902, *supra,* the railway company was in possession of its right of way with its road con-

structed, and whatever right the company had in and to the land could not under this act be taken without compensation. Under its language, it would have a prospective operation only, and would not reach land which had passed into private hands and to which private rights had attached. *Good et al. v. Keel et al., ante,* 116 Pac. 777; *Walbridge v. Board of County Com'rs, supra;* I Elliott on Roads and Streets (3d Ed.) § 438. Nor did the fact that the law provided for the establishment of public highways along all section lines, in and of itself, by its own operation, have the effect of opening them without further action on the part of the proper public authorities. 1 Elliott on Roads and Streets, § 438; *Van Wanning v. Deeter, supra; Henry v. Ward et al.,* 49 Neb. 392, 68 N. W. 518; *Oyler v. Ross,* 48 Neb. 211, 66 N. W. 1099; *Livingston v. Board of County Com'rs of Johnson County,* 42 Neb. 277, 60 N. W. 555; *Beatty et al. v. Beethe et al.,* 23 Neb. 210, 36 N. W. 494. And "it could have no effect where the lands had ceased to be a part of the public domain before the acceptance by the Legislature or the public, nor where private rights and interests had attached to public lands before the enactment." *Tholl et al. v. Koles, supra.*

Moreover, the order for the opening of this highway, upon which reliance is had for authority to fix the character of crossing, was one issued by the township board of Lynn Lane township. Assuming, but not deciding, that the proceedings taken were sufficient to have effected the opening of the highway, providing the other essential conditions existed, we now notice the section of the statute vesting such jurisdiction as is conferred on the board, to ascertain whether under the facts of this case it had authority to act at all.

Section 7753, Compiled Laws of Oklahoma 1909, provides: "The township boards shall have power and authority upon their own motion to open and establish public roads on section lines only in their own township, where the right of way can be obtained only by amicable settlement, and pay for such right of way shall be made out of the township funds."

Under the facts disclosed, the amicable settlement neces-

sary to vest in the said board the authority to act manifestly did not exist, for, notwithstanding the action taken by the board, the company refused to comply with the board's efforts to open the highway, and payment for the right of way sought to be opened or secured was not made. Under these circumstances, as we view it, the township board was not vested with jurisdiction to compel the opening of this highway; and hence the same was not opened. It is the claim of the plaintiff that the rights which were granted by Congress and accepted by it, and under which it is acting and holding its right of way, are exclusive rights, and established in its behalf, in and to its rights of way, an exclusive easement, the use of which cannot be taken, invaded, or diminished without just compensation. This claim is contested by the Attorney General, and, in view of the fact that further proceedings will probably be taken, we deem it proper to determine the question.

The earliest case in which we have found it discussed is that of *Old Colony & Fall River Railroad Company v. County of Plymouth*, 14 Gray (Mass.) 155, wherein the distinguished jurist, Chief Justice Shaw, said:

"We believe it has never yet been judicially determined that a railroad corporation who has, in the ordinary course of business, under an act of incorporation, built a road, and has it in full operation, can recover damages for injuries occasioned by laying out other ways, say public highways and townways, turnpikes, and other railroads over it. But the tendency of judicial opinion has been that they may. The language of the Constitution, in which the right to damages occasioned by the exercise of the power of eminent domain is given to all persons whose property is appropriated to the public use, and not previously acquired (as it lawfully may be) by purchase of the owner, is strong and decisive in favor of such a claim. Nor is it in our judgment material whether the property thus taken or appropriated is real estate held in fee, or an easement or lien upon real estate, or personal property. The word 'property' in the tenth article of the Bill of Rights, which provides that, 'whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor,' should have such a liberal construc-

tion as to include every valuable interest which can be enjoyed as property and recognized as such. Nor is it material whether the property is removed from the possession of the owner, or in any respect changes hands; if it is of such a character and so situated that the exercise of the public use of it, as warranted by the Legislature, does in its necessary natural consequences affect the property, by taking it from the owner or depriving him of the possession of some beneficial enjoyment of it, then it is 'appropriated' to public use by competent authority, and the owner is entitled to compensation. * * * No; the vague notion that damages cannot be given in favor of a railroad company whose road is crossed by another public way, we think, is founded on another consideration; that, inasmuch as the track of the railroad has been already appropriated to one public use, the authorizing of its further public use is not an appropriation of private property to public use, and therefore affords no claim for damages. There is something plausible in this; but on examination we think it does not warrant the distinction in support of which it is relied on. * * * The court are therefore of the opinion that a railroad company whose tracks have been crossed by public ways may sustain and recover damages in the usual modes provided for others sustaining damages by the appropriation of their property."

The Supreme Court of Kansas, in the case of *Kansas Central Railroad Company v. Board of Commissioners of Jackson County,* 45 Kan. 716, 26 Pac. 394, speaking through Mr. Justice Valentine, said:

"In all cases where a railroad company procures its right of way under the authority of the state, in the exercise of its sovereign power of eminent domain, by what are usually termed condemnation proceedings, the railroad company pays to the owner of the land the full value of all the land actually taken, and full and complete compensation for all the losses or damages which might result to the remainder of the owner's land, and both such value and compensation are paid by the railroad company, irrespective of any benefit or supposed benefit which might result to the owner of the land from the construction or the operation of the railroad. *L. & W. Rld. Co. v. Ross,* 40 Kan. 598 [20 Pac. 197, 2 L. R. A. 217]; *Rapid Transit Rly. Co. v. Simpson* [45 Kan. 714, 26 Pac. 393] just decided. And the railroad company, in paying this value and for these damages, always pays largely more in the aggregate than the land actually taken is

worth—sometimes 10 or 20 times more than it is worth. And while the railroad company procures its right of way through the intervention of the state in the exercise of its sovereign power of eminent domain, and procures the same ostensibly for public purposes—and land can never be taken under such power for any other than a public purpose—yet the railroad company alone pays for such right of way, and sometimes, as before stated, pays an amount aggregating 10 or 20 times more than the land actually taken is worth. And, although the property is taken ostensibly for a public purpose, yet all the authorities agree that the railroad company, by procuring its right of way and paying for it, procures an actual, individual, private right, easement, and an estate paramount to the rights or interests of all others, except the right of the state, to again subject the land to be taken under the power of eminent domain. The railroad company in such a case is the dominant owner, and the owner of the fee is only a servient owner. It therefore necessarily follows that any person who should interfere with the railroad company's occupancy, use, or control of its right of way, except with the authority of the railroad company, or in subserviency to its rights, or under the sovereign power of eminent domain, would be a trespasser, liable to the railroad company for all damages that might result from the trespass. And it would also seem to follow that, where the interference is under the sovereign power of eminent domain, and the railroad company sustains substantial loss from such interference, the railroad company would be entitled to just compensation for all such loss. Certainly, whenever the railroad company's right to the exclusive occupancy, use, and control of its right of way is interfered with permanently under the power of eminent domain, something is taken from the railroad company. Of course, it is not the fee in the land that is taken, for the railroad company does not own the fee; nor is the fee, under the present laws, ever taken from any one under the power of eminent domain. What is taken in such a case is a portion of the railroad company's exclusive right to the occupancy, use, and control of its right of way, a part of its easement, and making it a tenant in common with some other person, corporation, or the public. This is certainly a taking of something from the railroad company which is valuable. It is a taking of a portion of the railroad company's estate, for which it has paid full and ample compensation, and for the taking of which it is entitled to compensation."

The rule, as stated in the authorities from which we have

quoted above, finds support in the great majority of the adjudicated cases of the courts of the different states of the Union, as well as the Supreme Court of the United States. Among the cases where this doctrine has been declared or recognized may be noted the following: *Southern Kansas Ry. Co. et al. v. Oklahoma City,* 12 Okla. 82, 69 Pac. 1050; *Chicago, B. & Q. R. R. Co. v. Chicago,* 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed. 979; *Chicago & Grand Trunk Ry. Co. v. Hough et al.,* 61 Mich. 507, 28 N. W. 532; *Grand Rapids v. Grand Rapids & Indiana R. R. Co.,* 58 Mich. 641, 26 N. W. 159; *City of Terre Haute et al. v. Evansville & Terre Haute R. R. Co.,* 149 Ind. 174, 46 N. E. 77, 37 L. R. A. 189; *Crossley et al. v. O'Brien et al.,* 24 Ind. 325, 87 Am. Dec. 329; *Hook et al. v. Chicago & Alton R. R. Co.,* 133 Mo. 313, 34 S. W. 549; *City of Kansas v. Kansas City Belt Ry. Co.,* 102 Mo. 633, 14 S. W. 808, 10 L. R. A. 851; *Portland & Rochester R. R. Co. v. Deering,* 78 Me. 61, 2 Atl. 670, 57 Am. Rep. 784; *Chicago, Kansas & Western R. R. Co. v. Board of Com'rs,* 49 Kan. 763, 31 Pac. 736; *Illinois Central R. Co. et al. v. State ex rel.,* 94 Miss. 759, 48 South. 561; *Chicago, B. & Q. R. R. Co. v. County of Douglas et al.,* 1 Neb. (Unof.) 247, 95 N. W. 339; *St. Louis Southwestern Ry. Co. v. Royall,* 75 Ark. 530, 88 S. W. 555; *Louisville & Nashville R. Co. v. City of Louisville,* 131 Ky. 108, 114 S. W. 743, 24 L. R. A. (N. S.) 1213; *City of New Haven v. New York, N. H. & H. R. Co.,* 72 Conn. 225, 44 Atl. 31; *Town of Poulan et al. v. Atlantic Coast Line R. Co.,* 123 Ga. 605, 51 S. E. 657; *Illinois Central Ry. Co. v. Com'rs of Highways of Mattoon,* 161 Ill. 247, 43 N. E. 1100; *Illinois Central R. Co. v. City of Chicago,* 156 Ill. 98, 41 N. E. 45; *Chicago & Northwestern Ry. Co. v. Town of Cicero,* 154 Ill. 656, 39 N. E. 574; *Illinois Central R. Co. v. City of Bloomington,* 76 Ill. 447.

The authorities relied upon by the Attorney General are not in the main inconsistent with the foregoing cases. Their inapplicability in our judgment is attributable to a failure to distinguish sharply and clearly between the principles of law relating where eminent domain is resorted to, and those involved

where the police power of the state alone is involved. Under the former, there cannot be a taking of private property for public use without just compensation, while under the latter power regulation of the use of property by the public authorities for the benefit of the public is as broad as the scope of government itself. Dealing with the thought which we have in mind, the Supreme Court of Indiana, in the case of *Cincinnati, I. & W. Ry. Co. v. City of Connersville,* 170 Ind. 316, 321, 83 N. E. 503, 505, which was a crossing case, says:

"There are two distinct principles of law that operate upon the question we have under consideration, namely, 'eminent domain,' which implies a taking by the sovereign for some public benefit, and the 'police power,' which implies a regulation by the sovereign of private property for the preservation of the public safety, health, and general welfare. 'Eminent domain' is a reserved right, or an unextinguishable attribute of sovereignty, that may be exercised by the state, or its authorized agent, to effect a public good whenever public necessity requires it. Resting upon a public benefit, it cannot, under the Constitution, be enjoyed by the public, except upon condition that full compensation for all damages to private property (for that taken within the meaning of the organic law) shall first be paid or tendered. The 'police power' arises from a very different source. It springs from the fundamental principle that every property owner must so use his own as not to endanger the safety, health, and general welfare of the community in which he lives. 1 Lewis, Eminent Domain (2d Ed.) § 6, and authorities collated. It operates upon an existing evil that injuriously affects the health, morals, safety, or general welfare of the community, and is a power to which every person and corporation must yield obedience, and from which the state itself cannot grant exemption."

Under the exercise of the right of eminent domain, the public is entitled to lay its highway across plaintiff's right of way, and under the authority of the police power, if the facts exist, the Corporation Commission has power to fix the kind and character of crossing to be established. The jurisdiction and duties, as well as the principles involved, are separate and distinct. The highway must first be established and opened by the local authorities, and then the jurisdiction vested in the Corporation

Commission attaches to determine the character of crossing to be built. Under section 20 of article 9 of the Constitution of Oklahoma, authority and jurisdiction is vested in this court to issue the writ here prayed for whenever such writs would lie to any inferior court or officer. Such occasions are presented where the court or officer acts without jurisdiction, and hence, from the view which we take in this case, will lie in this instance.

It therefore follows that the writ prayed for will be granted. Upon promulgation of this opinion, notice thereof shall be given the Corporation Commission, and the writ itself shall not issue, except upon a further application and a showing of necessity therefor.

All the Justices concur.