2011 OK CIV APP 32

**BNSF RAILWAY COMPANY,
Protestant/Appellant,**

v.

**BOARD OF COUNTY COMMISSIONERS OF TULSA COUNTY and the State of Oklahoma ex rel. the Oklahoma Corporation Commission, Applicants/Appellees.**

No. 106,649.

Court of Civil Appeals of Oklahoma, Division No. 2.

Sept. 30, 2010.

Rehearing Denied Dec. 22, 2010.

Certiorari Denied Feb. 28, 2011.

Approved for Publication by Order of the Supreme Court March 16, 2011.

William P. Tunnell, Jr., Rainey, Ross, Rice & Binns, Oklahoma City, Oklahoma, for Protestant/Appellant BNSF.

Rachel Lawrence Mor, Amy H. Wellington, A. Daniel Woska & Associates, P.C., Oklahoma City, Oklahoma, and Cody L. Graves, Oklahoma City, Oklahoma, for Applicant/Appellee Tulsa County Board of Commissioners.

Michele Craig, Benjamin B. Jackson, Office of General Counsel, Oklahoma City, Oklahoma, for Applicant/Appellee Oklahoma Corporation Commission.

JOHN F. FISCHER, Presiding Judge.

¶1 This is an appeal by BNSF Railway Company from an order of the Oklahoma Corporation Commission (Commission) granting the Board of County Commissioners for Tulsa County's (Board) application to open a railroad crossing.

## BACKGROUND

¶2 To facilitate the development of an industrial park, the Board applied to the Commission for authorization to open a railroad crossing. The cost of the crossing would be paid for by the developer of the park. The proposed crossing would affect two tracks owned and operated by BNSF. BNSF filed a response objecting to the Board's application and also moved to dismiss the application based on jurisdictional grounds. The matter was heard by an administrative law judge (ALJ), who found that BNSF's motion to dismiss was without merit and recommended that it be denied. The ALJ also recommended that the Board's application be denied. Both parties appealed to the Commission *en banc*. The Commission found that it had jurisdiction and granted the

Board's application. BNSF appeals both decisions.

¶ 3 Two issues are raised in this appeal, the Commission's jurisdiction and whether there is sufficient support for the order granting the Board's application. We find that the Commission does have jurisdiction in this case and that there is sufficient support for the order granting the Board's application, and therefore affirm the order appealed.

## STANDARD OF REVIEW

¶ 4 The Oklahoma Constitution provides that, in appeals from Corporation Commission orders, other than appeals involving asserted violation of the parties' constitutional rights, the appellate court's review "shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence." Okla. Const. art. 9, § 20. Oklahoma has adopted the definition of the United States Supreme Court that " 'the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.' " *El Paso Natural Gas Co. v. Corp. Comm'n,* 1981 OK 150, ¶ 9, 640 P.2d 1336, 1338–39 (quoting *Universal Camera Corp. v. Nat'l Labor Relations Bd.,* 340 U.S. 474, 71.S.Ct. 456, 95 L.Ed. 456 (1951)).

■ When reviewing the sufficiency of the evidence, this Court's review is:

> restricted to determining whether the Commission's findings and conclusions are sustained by the law and substantial evidence. Such a review does not include weighing the evidence on appeal, but only determining whether the supporting evidence possesses substance and relevance. This process does not entail comparing the evidence of the parties, but includes determining if the evidence supporting the order furnishes a substantial basis of facts from which the issue could be reasonably resolved.

*Samson Res. Co. v. Okla. Corp. Comm'n,* 1987 OK 73, ¶ 11, 742 P.2d 1114, 1116 (citations omitted). Further, "[b]ecause Commission decisions often involve complex issues of economics, accounting, engineering, and other special fields of knowledge, a presumption of correctness accompanies the Commission's findings in matters it frequently adjudicates and in which it possesses expertise." *In re Southwestern Bell Tel., L.P.,* 2007 OK 55, ¶ 9, 164 P.3d 150, 156 (footnote omitted).

## ANALYSIS

### I. Jurisdiction

■ ¶ 5 BNSF's jurisdictional argument is premised on the contention that there is no existing highway opened across its tracks. At the proposed crossing, Highway 33 (Southwest Boulevard) runs parallel to the BNSF tracks to the west and the Turner Turnpike to the east. There is an exit from the Turnpike for South 49th West Avenue, the location of the proposed crossing, that runs perpendicular to the Turnpike, Highway 33 and BNSF's tracks. The west end of South 49th West Avenue ends at Highway 33 east of the tracks and the proposed industrial park. BNSF argues that, until a highway is opened immediately west of its tracks, the Commission lacks jurisdiction.

¶ 6 BNSF's argument admittedly depends on a "literal" interpretation of 17 O.S.2001 § 81, which provides: "The Corporation Commission is given full jurisdiction over all public highway crossings, where same cross steam or electric railroads or railways within the State of Oklahoma." BNSF argued to the Commission that jurisdiction was lacking because "there is no open highway there." In its brief in chief, BNSF argues: "Without an existing, established public highway, which has been opened by the local authorities over the railroad's tracks, the Commission does not have jurisdiction under [section] 81."

¶ 7 As pointed out by the Board and the Commission, the extension of South 49th West Avenue to the west, across BNSF's tracks, was designated in the 1988 Tulsa Metropolitan Area Major Street and Highway Plan. And, the Board has adopted a resolution approving the extension of South 49th West Avenue to the industrial park to provide access to Highway 33 and establishing an easement for that purpose.

¶ 8 The ALJ found BNSF's argument to be "without merit." The Commission also found that it had jurisdiction in this case. We agree. In *Atchison, Topeka and Santa Fe Ry. Co. v. State*, 1984 OK 29, 683 P.2d 974, the railroad company had argued that the Commission lacked jurisdiction to issue an order designating two grade crossings with signal devices and directing the railroad to construct and maintain such crossings. The order made the railroad's performance contingent on the State acquiring the right of way. On appeal, the railroad argued that the authority conferred on the Commission was "limited to situations where a railroad crosses an established highway." *Id.* at ¶ 12, 683 P.2d at 977. The Court found "no merit in [the railroad's] argument." *Id.* at ¶ 13, 683 P.2d at 977.

> It makes no difference which thoroughfare was laid down first. In *Chicago, R.I. & P. Ry. Co. v. Taylor, supra* [79 Okla. 142, 192 P. 349 (1920) ], the Court noted that the Legislature, in the exercise of its police powers, may impose on railroads the duty of maintaining highway crossings, although the street or highway was laid across the railroad subsequent to its construction.

*Id.* at ¶ 12, 683 P.2d at 977.

¶ 9 A finer point is put on BNSF's argument in its reply: "BNSF's point is *not* that the proposed highway is not 'established' in the sense that the actual roadway in not yet built. BNSF's point is that the proposed highway is not *legally* established." This argument is addressed to whether the Board has acquired a right-of-way from BNSF across its tracks at South 49th West Avenue. The only citation to the record supporting this argument is to the Board's resolution, which BNSF argues is "unsigned, unattested" and even if authentic, could not establish a right-of-way by "fiat." BNSF did not object to the introduction of this exhibit at the hearing before the ALJ. BNSF did not produce any evidence at that hearing regarding the status of title to the proposed crossing, and did not argue to the Commission that the Board lacked the authority to establish an extension of South 49th West Avenue across its tracks.

¶ 10 BNSF's attempt to distinguish this case in reliance on footnote four of the Court's opinion in *Atchison* is unsuccessful. In that opinion, the Supreme Court noted that the dispositive issue in *St. Louis & S.F. R.R. Co. v. Love*, 1911 OK 316, 29 Okla. 523, 118 P. 259, was whether local authorities had paid the railroad for an easement, not whether the road had been established prior to the railroad. The issue raised by this record is not whether the Board has by settlement or eminent domain acquired an easement across the BNSF tracks at South 49th West Avenue. We agree that the Commission cannot decide issues concerning legal title to private property.[1] However, we do not find that the Order appealed has that effect. The Commission authorized the opening of a crossing without respect to resolving any private dispute as to how much the Board will pay for the easement and pursuant to what procedure the Board and BNSF resolve any easement issue.

¶ 11 Further, we need not decide whether the holding in *Love* applies to cases decided pursuant to currently applicable statutory and constitutional provisions. BNSF did not raise its right to be paid for an easement before the Commission. There is no evidence in this record to support the claim, raised for the first time in BNSF's reply, that the Board has not obtained an easement necessary before this road can be established. "This Court will not accept unsupported statements in the brief, or statements made in argument of counsel to the

---

1. It is well settled that the Commission lacks authority to adjudicate issues of title to oil and gas properties. In that area, its jurisdiction is limited to adjudicating public rights. *Tucker v. Special Energy Corp.*, 2008 OK 57, ¶¶ 9–10, 187 P.3d 730, 733–34 ("The Commission does not have the authority to determine the effect of its order on a legal title to property."). Similarly, the Commission's jurisdiction is limited to regulating the performance of a railroad's "public duties." Okla. Const. art. 9, § 18. In *Chicago, R.I. & P. Ry. Co. v. State*, 1932 OK 467, 12 P.2d 494 (Syllabus 2), the Supreme Court stated that the Commission "has no power or jurisdiction to adjudicate differences between private litigants, or purely private matters between a utility and a citizen." We find no grant of authority to the Commission over issues concerning legal title to railroad property.

trial court, otherwise unsupported, as a basis for appellate decision." *Price v. Price,* 1970 OK 116, ¶ 8, 471 P.2d 894, 896. BNSF "bears the total responsibility for including in the appellate record all materials necessary to secure corrective relief." *Hulsey v. Mid-America Preferred Ins. Co.,* 1989 OK 107, ¶ 7, 777 P.2d 932, 936. It has failed to do so with respect to whether the Board has acquired the necessary legal interest to extend South 49th West Avenue or show that is a prerequisite to an order of the Commission authorizing a crossing to be opened. The order of the Commission finding that it had jurisdiction in this matter is affirmed.

### II. Sufficiency of the Evidence

■ ¶ 12 BNSF points out that there are existing crossings approximately one-half mile to either side of the proposed crossing. It argues that either crossing is sufficient and a new crossing is unnecessary. However, BNSF's challenge to the evidentiary support for the Commission's order centers on the May 1988 Final Report of the Oklahoma Railroad Grade Crossing Safety Task Force. BNSF argues that, based on the evidence, the crossing "should not be authorized" according to two provisions of the Report. First, emergency vehicles may be blocked from entering or leaving the industrial park during the one hour required to reconnect a standing train. Second, the proposed crossing involves two tracks, both of which may be occupied by more than one train. Although BNSF argues that as a result of these circumstances it is "mandatory" that the proposed crossing not be opened, it is undisputed that the contents of the Report contain only recommendations. The ALJ found that the Report was "not a set of rules, which the Commission is obligated to follow." The Commission affirmed that finding.

■ ¶ 13 BNSF concedes that the "purpose [of the Report] was to promote guidelines for opening, consolidating, or closing crossings in the State of Oklahoma for the purpose of improvements in highway rail crossing safety." Although BNSF's evidence "detracts" from the Commission's conclusion, BNSF has failed to show that the two Report guidelines on which it focuses were the only factors relevant to the Commission's decision to grant the Board's application. The responsibility of this Court is not to weigh the evidence submitted, but to determine whether the evidence on which the Commission relied "possesses substance and relevance." *Samson Res. Co.,* 1987 OK 73 at ¶ 11, 742 P.2d at 1116.

¶ 14 In that regard, BNSF contends that the "Final Order of the Commission refers to no evidence which would cause the Commission under its guidelines embodied in its Safety Task Force to order the construction of the improvements at the crossing." The record does not support that contention. The order states: "When faced with the prospect of increasing truck traffic over existing, inadequate crossings and through nearby neighborhoods, including an elementary school, the Commission finds that public safety is best served by opening the proposed crossing."

¶ 15 There is substantial evidence in the record to support the Commission's finding. Mr. Jordan, Tulsa County Engineer, testified that the existing crossing at 65th West Avenue was not a good alternative because it would be a difficult access route for trucks trying to reach the park and would increase traffic on 65th near an elementary school. The Bond Director of the Tulsa County Public Schools had written a letter supporting the Board's application because of safety concerns at the school from increased truck traffic if the application was not granted. Mr. Jordan also testified that the existing crossings did not provide direct access to the park and were difficult for trucks to cross because the track elevation was higher than the roadway. Jon McGraft, president of a company that designs, builds and constructs railroad projects, testified that the proposed crossing met the criteria in the Report for opening a crossing, and that there was adequate sight distance for motor vehicles at the proposed crossing. David Polson, developer of the park, testified concerning the difficulty of opening an entrance to the park from West 51st, even if he were able to acquire access from the owners of the property between the park and West 51st. He also testified concerning the difficulty that the

kinds of trucks he anticipated occupants of the park to use would have crossing either of the existing crossings. Even BNSF witness William Thompson acknowledged that trucks sometimes get "hung up" on tracks where the track elevation is higher than the roadway. In that circumstance, he testified that there are "1–800 numbers" for the truck drivers to call and notify the railroad that the track is blocked. He also acknowledged that when a truck is stuck on the track, it may be necessary for the truck cargo to be unloaded before the truck can be removed. It was Mr. Thompson's opinion that the safest crossing was a closed crossing. Pursuant to a subpoena from BNSF, the Commission's Railroad Department Manager, Sherry Soliz, testified that the potential for accidents may increase at the existing crossings if the park is developed and the proposed crossing is not opened.

¶ 16 BNSF also complains that the Board did not coordinate its plans for the crossing with BNSF personnel, as the Report suggests should be done. Again, absent some legal obligation for the Board to follow the Report's suggestions, the force of this argument is lacking. BNSF does acknowledge that it met with the developer of the park and offered to voluntarily open the crossing, if the Board would agree to close an existing crossing. According to evidence presented to the ALJ, this offer was consistent with BNSF's policy to not allow the opening of a new crossing unless another crossing is closed.

¶ 17 Although the evidence clearly shows that opening a crossing at South 49th West Avenue is contrary to BNSF's business philosophy and would disrupt certain aspects of its current operation, BNSF contends that its primary reason for objecting to the proposed crossing is "the safety of rail operations and that of the traveling public." BNSF's concern in this regard is admirable. Nonetheless, it is the Commission, not BNSF, that is constitutionally and statutorily charged with determining when the opening of a railroad crossing best serves public safety. *See* Okla. Const. art. 9, § 18; 17 O.S. 2001 §§ 81, 84. It has been settled law for more than eighty years that the Commission

has the authority to order the opening of a railroad crossing based on public safety and convenience. *Atchison,* 1984 OK 29 at ¶ 6, 683 P.2d at 976.

## CONCLUSION

¶ 18 The Commission had jurisdiction to hear the Board's application for authorization to open a crossing at South 49th West Avenue. There is substantial, relevant evidence to support the Commission's order approving the Board's application. Therefore, we affirm the order of the Commission appealed by BNSF.

¶ 19 **ORDER AFFIRMED.**

WISEMAN, C.J., and BARNES, J., concur.